No. 41,385

State of Kansas, *Appellee,* v. Ralph J. Clark, *Appellant.*

(460 P. 2d 586)

Opinion filed November 8, 1969.

*Robert D. Beall,* of Leavenworth, and *Roger W. Noonan,* of Olathe, both argued the cause and were on the briefs for the appellant.

*Hugh H. Kreamer,* Assistant County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *James W. Bouska,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an appeal in a criminal action by the defendant-appellant who was convicted by a jury of first degree murder of his wife. He was sentenced to life imprisonment in the Kansas State Penitentiary.

The principal issue concerns the propriety of instructions dealing with the felony murder rule as applied to the facts of the case.

The sole defense at the trial was insanity at the time of the alleged offense. The facts are not in dispute.

Defendant Ralph J. Clark, a deaf mute, and Rosa E. Clark had been married for about thirteen years and lived in Olathe. Defendant attended the Kansas School for the Deaf at Olathe and had been employed for several years as a farm laborer on the farm operated by the school. The evidence disclosed that Ralph and Rosa experienced marital difficulties, which extended over a period

of time, and culminated in Rosa's filing a divorce action in Olathe on July 10, 1956. At that time defendant was employed by the Reno Construction Company at Melvern.

On July 15, 1956, between 9 and 10 a. m., while at work at Melvern, defendant was served with a summons in the divorce action by the sheriff of Osage County. After he was served with the summons, defendant left his job to go to Olathe. He was described by his supervisor as being emotionally disturbed.

Around 1:30 p. m. defendant arrived in Olathe at the home of Helen Mayes, who was a sister of defendant's wife Rosa. Helen was an eyewitness to the events·that transpired.

Helen testified that Rosa had come to her home in Olathe and as they were getting into a truck to leave Ralph drove up in his car; that Ralph got out of his car and asked Rosa to get out of the truck and they approached each other. Helen testified:

"They got out of the car and they walked toward each other and Rosa got out of her car and they met. Ralph didn't say anything at first. Rosa said, 'Why aren't you working today? It is a nice day.' And then Rosa said, 'Did you mess up my car?' Ralph said, 'No.' And he said, 'Why are you divorcing me?' And then Rosa said, 'Yes; we agreed on that before.' And then he grabbed her hand and stabbed her."

Helen further testified that Ralph appeared cross and mad; that she had seen him mad before; and that Ralph and Rosa talked about five minutes when Ralph stabbed Rosa twice. He first stabbed her in the stomach, she attempted to run away, Ralph turned, caught Rosa, and stabbed her a second time in the chest; Ralph then stabbed himself several times in the abdomen. Helen did not know where Ralph got the knife but that he did have it on his person somewhere. She further testified that Ralph made threats on previous occasions and that Ralph and Rosa had quarreled before about Rosa running around with other men and wasting Ralph's money.

Edward J. Bowers, a detective for the Johnson County sheriff's office, was called and when he arrived found Rosa lying on the ground moaning and bleeding from her right side. He also found Ralph with several wounds. Both Ralph and Rosa were taken to Olathe Community Hospital where Rosa died that afternoon at 2 p. m. Ralph was removed to the Kansas University Medical Center and subsequently recovered.

On July 17, 1956, a complaint was filed in magistrate court and preliminary hearing set for August 13, 1956. After hearing evidence, the magistrate court bound Clark over to the district court for trial on murder in the first degree.

An information charging Clark with murder in the first degree was filed on August 23, 1956. Thereafter, a petition was filed for the appointment of a commission to determine whether Clark was able to comprehend his position and make his defense. The commission was appointed and reported that in its opinion Clark was insane. On October 8, 1956, the trial court approved the commission's report and committed Clark to the Larned State Hospital for safe keeping and treatment as provided by law.

Clark remained in the Larned Hospital until February 1, 1958, when he was returned to Johnson County for trial. On February 11, 1958, Clark appeared before the district court; Herbert L. Lodge, of the Johnson County Bar, was appointed to represent Clark and Rice Lardner and W. C. Jones, who had represented him in all previous proceedings, were permitted to withdraw as Clark's counsel.

Clark's new counsel filed a motion requesting the appointment of a sanity commission to determine Clark's ability to stand trial. A commission was appointed and, after examining Clark, reported on March 10, 1958, that he was competent to stand trial. The report of the commission was approved by the trial court. Thereafter, on request, the court authorized Clark to employ, at the expense of the county, two physicians to examine Clark and testify concerning the issue of his sanity at the time of the commission of the alleged offense.

On March 10, 1958, Clark was arraigned and, standing mute, a plea of not guilty was entered by the court. The trial commenced on March 24, 1958, and was concluded three days later by a jury's verdict of guilty of murder in the first degree, fixing Clark's punishment at life imprisonment.

A motion for a new trial was filed, heard and overruled by the court on April 16, 1958. Clark was then confined in the State Penitentiary at Lansing.

On October 8, 1958, through his court-appointed counsel, Clark filed a notice of appeal, but the appeal was not perfected. Clark now claims that on January 27, 1959, prison officials of the state penitentiary confiscated his pro se brief and abstract, which he had prepared for docketing in the Kansas Supreme Court. His claim is

neither corroborated nor supported by any evidence in the record.

On March 10, 1959, Clark was notified by the clerk of this court that his appeal had been dismissed since no brief or abstract had been filed.

In 1964 Clark filed a motion to vacate his sentence pursuant to K. S. A. 60-1507. The motion was denied by the trial court and, on October 22, 1964, a notice of appeal from that ruling was filed in this court. On October 28, 1965, this court on its own motion entered an order directing that Clark's motion be treated as a request for the appointment of counsel pursuant to our Rule No. 56 (Prefatory Rule No. 1 [f], 201 Kan. xv) for the purpose of perfecting and presenting an appeal from the judgment and sentence to this court.

Subsequently, this court entered an order reinstating Clark's original direct appeal and it is now before us.

In his motion for a new trial defendant set out ten grounds for reversal and reasserts them as his points on appeal. However, in view of our disposition of the case, we think it only necessary to consider defendant's objections to certain instructions.

The trial court submitted twenty-three instructions which covered and presented to the jury rules of law pertaining to murder in the first and second degrees and insanity as a defense. The defendant objected to five of the instructions during the trial and reasserted his objections on motion for a new trial. We believe there is merit in defendant's objections to those instructions, which applied the felony murder doctrine to this case.

Our first degree murder statute G. S. 1949, 21-401 (now K. S. A. 21-401) prescribes two concepts under which a homicide is indictable as murder in the first degree. First, a deliberate premeditated killing and, second, the Kansas version of the common-law rule that if a person kills another in doing or attempting to do an unlawful act, amounting to a felony, the killing is murder.

21-401, *supra*, reads as follows:

"Every murder which shall be committed by means of poison or by lying in wait, or by any kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or an attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree."

In the instant case, three of the instructions (Nos. 6, 8 and 9), objected to by defendant, deal with the application of the perpetration of a felony concept of our statute.

Instruction No. 6 consists of two paragraphs, the first of which recites the provisions of 21-401 in full. The second paragraph reads as follows:

"Murder is the unlawful killing of a human being, with malice aforethought, either express or implied, by a person of sound memory and discretion, and under the law in this state, when it is committed by means of poison, or by lying in wait; or when it is committed willfull, deliberately and premeditately, or when it is committed in the perpetration of, or an attempt to perpetrate any felonious assault, it is deemed to be, and is, murder in the first degree."

In Instruction No. 8 the thrust and effect of the felony murder rule is correctly set out in the first paragraph and assault with felonious intent, as defined in G. S. 1949, 21-431 (now K. S. A. 21-431), is fingered as the felony involved in this case.

In Instruction No. 9 the first paragraph deals with premeditated murder, as applied to the facts of this case. The second paragraph applies in the alternative the felony murder rule and reads as follows:

"Or, if you find from all the evidence beyond a reasonable doubt that at the time and place alleged in the information that the defendant, Ralph J. Clark, did unlawfully, feloniously, on purpose and of malice aforethought, stab Rose Eva Clark with a deadly weapon, with the intent to kill or maim her, the said Rose Eva Clark; and you further find beyond a reasonable doubt that the said Ralph J. Clark while so engaged in the perpetration of such felonious assault upon the said Rose Eva Clark, did then and there inflict mortal wounds upon her from which she did then and there die, then you must find the defendant, Ralph J. Clark, guilty of murder in the first degree."

Under the instructions recited, the jury, if unable to find premeditation, is presented with the alternative of convicting under felony murder; the felony being felonious assault by stabbing under 21-431.

The felony murder provisions of our statute, in the context presented here, was first considered by this court in *State v. Fisher,* 120 Kan. 226, 243 Pac. 291. The *Fisher* case was a first degree murder prosecution in which the felony murder rule was applied in instructions quite similar to those in the instant case. The deadly weapon in *Fisher* was a rifle, instead of a knife, and the assault resulting in the homicide was a shooting, instead of a stabbing. However, the other felony relied on in *Fisher* was—as here—assault with felonious intent.

This court set aside the conviction in *Fisher* and, with respect to the application of the felony murder rule, held:

". . . the other elements constituting the felony must be so distinct from that of the homicide as not to be an ingredient of the homicide, convictable under an information charging the homicide as murder." (Syl. p. 226.)

The reasoning of the court is explained by Mr. Justice Harvey speaking for the court:

". . . It is the contention of the state that if murder is committed in the perpetration or the attempt to perpetrate any other felony, it is murder in the first degree; hence, that if the boy, John Michael Foley, met his death at the hands of defendant, while defendant was committing an assault with a deadly weapon, under such circumstances that it amounted to a felony under any statute pertaining thereto, the offense is murder in the first degree. This contention cannot be sustained. The effect of it would be to make any homicide, not excusable or justifiable, which by our statute is defined to be manslaughter in any of the degrees, or murder in the second degree, to constitute murder in the first degree. In other words, there could, under this interpretation of the statute, be no such thing as any lower degree of homicide than murder in the first degree. . . .

"We have examined all of the authorities cited in the able brief of counsel for the state as tending to support this instruction. It will not be necessary to make a detailed analysis of them. The few which tend to support the instruction are upon statutes differing from our own and are not applicable. Those holding that a murder committed in the perpetration or attempt to perpetrate a distinct offense, as robbery, arson, or the like, are in keeping with our own decisions and are not opposed to the conclusion here reached. Here the act of the defendant in doing the shooting is either murder in the first degree or some other offense. That same act cannot be made the basis, first, of some other felony, as manslaughter, and then that felony used as an element of murder in the first degree. . . ." (pp. 230, 231.)

Following its first pronouncement, the holding in *Fisher* has been discussed and noted with approval in *State v. Booker*, 197 Kan. 13, 415 P. 2d 411, and 200 Kan. 166, 434 P. 2d 801, cert. den. 391 U. S. 965, 20 L. Ed. 2d 879, 88 S. Ct. 2031; *State v. Moffitt*, 199 Kan. 514, 431 P. 2d 879; *State v. Severns*, 158 Kan. 453, 148 P. 2d 488, and *State v. Merriweather*, 136 Kan. 337, 15 P. 2d 425.

In *State v. Moffitt*, supra, where the other felony involved was possession of a pistol after conviction of a felony under K. S. A. 21-2611, Justice Schroeder speaking for the court points out the distinction in the situation there from that existing in *Fisher*:

". . . The assault was the same act which resulted in the homicide. This was held improper on the ground the same act cannot be made the basis, first, of some other felony, and then that felony used as an element of murder in the first degree. The situation in *Fisher* is to be distinguished from the facts presently before the court." (p. 530.)

The purpose of the felony murder rule is to relieve the state of the burden of proving premeditation and malice when the victim's death is caused by the killer while he is committing another felony.

The rationale being that the killer's malignant purpose is established by proof of the collateral felony. But where the other felony, such as an assault, directly results in or is an integral element of the homicide, the assault becomes merged with the killing and cannot be relied upon as an ingredient of felony murder. Under a statute, such as ours, if the rule were to be applied otherwise then, as noted by Justice Harvey in *Fisher*, "there could be no such thing as any lower degree of homicide than murder in the first degree."

As was noted in the *Fisher* opinion, the application of the felony murder rule is not limited in some jurisdictions by the doctrine of merger of the felony and the killing. Our research indicates the division stems from a variance in statutory provisions for felony murder.

Cases from many jurisdictions are catalogued and statutory variances are noted in a survey of the subject (The doctrine of merger in felony-murder and misdemeanor-manslaughter) in Vol. xxxv St. John's Law Review, at page 109. See, also, Vol. 1 Wharton's Criminal Law and Procedure, Murder, § 251 [Felony-murder rule], p. 539, and 40 Am. Jur. 2d, Homicide, § 72, pp. 364, 366.

The Supreme Court of California was recently confronted with the identical problem in *People v. Ireland*, 75 Cal. Rptr. 188, 450 P. 2d 580 (1969). The court said:

". . . To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes the great majority of all homicides. . . ." (p. 198.)

We turn next to the problem in the case at bar whether the error requires reversal. As we have noted, the facts are not in dispute nor the killing denied. The state's evidence was ample to support the conviction. The reporter's transcript of the trial, which we have at hand, reveals the real issue in the trial to have been the defense of insanity which was thoroughly and forcefully presented by defendant's trial counsel. The trial transcript reflects that while defendant's counsel objected to the instructions on felony murder, he failed to specify the question of law involved; nor did he call the trial court's attention to *State v. Fisher*, supra, or any of the other authorities we have mentioned. The evidence is such that the jury could not have acquitted the defendant unless it found him to be

insane at the time of the offense. However, the erroneous instructions might have influenced the jury's consideration of murder in the second degree.

In weighing the gravity of the error, we feel obliged to mention a reference by the county attorney to the felony murder instructions during his closing argument, even though no objection was lodged at the time. The county attorney quoted a portion of instruction No. 8 and then stated to the jury:

"In other words, what that means, I might have no particular design to kill you. Any one of you. I may have a knife and I am going to just assault you with it and cut you. Say maybe I just took my knife out of my pocket and I was mad, so I said, 'I am just going to cut you some place that is fatal, that they [then] becomes Murder in the First Degree, because I killed someone when I was attempting to perpetrate the crime of under those facts—of criminal assault, or assault with a deadly weapon,' and 'deadly weapon' here is any weapon, the nature and character of which is calculated to cause death or great bodily harm, if used for that purpose."

The impact on the jury of the felony murder instructions, emphasized by the county attorney's remarks, is, of course, not ascertainable. Under the circumstances related, however, we are unable to say the verdict was not affected.

The judgment is reversed with directions to grant a new trial.

O'CONNOR, J., not participating.