The PEOPLE OF the TERRITORY OF GUAM, Appellee,

v.

Arthur Scott ROOT, Appellant.

No. 74–2942.

United States Court of Appeals, Ninth Circuit.

Sept. 8, 1975.

Rehearing Denied Oct. 22, 1975.

Certiorari Denied Jan. 19, 1976.

See 96 S.Ct. 861.

Benjamin M. Abrams (argued), Aga-proportionate to his participation in the

Harold J. Heafer, Asst. Atty. Gen. (argued), Agana, Guam, for appellee.

## OPINION

Before BARNES, KILKENNY and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

Arthur Scott Root appeals his conviction on two counts of first-degree murder and one count of armed robbery.

Two United States Navy enlisted men were found shot to death in an abandoned naval bunker near San Carlos, Guam. The bodies had been stripped of valuables. Police investigation led to the arrest of George San Augustin and Arthur Scott Root. San Augustin gave the police no information. Root made at least two signed statements, the voluntariness of which is not in issue.

The statements attributed the actual shooting to San Augustin. Root admit-

ted that he furnished the .45 calibre pistol which killed the victims. Root also admitted that he had participated in picking up two hitchhiking sailors in San Augustin's vehicle, and in taking them at gunpoint to the place of their robbery and execution; Root pointed the gun and issued orders during the journey to the bunker. He admitted removing the watches and contents of the victims' billfolds, but contends that the activity occurred after the victims were already dead at the hands of San Augustin.

Because there was no evidence against San Augustin, except the testimony of Root, San Augustin was not prosecuted. *See* Guam Penal Code § 1111.

Root testified that before he handed his pistol to San Augustin he protested San Augustin's announced plan to shoot the victims. Root also testified that he had not planned to rob the victims; that his mind was confused by marijuana; and that he "didn't know what to do" but went along with San Augustin's directions. A diminished-capacity instruction was given, and we find it to be free from reversible error.

Root's principal objection to the instructions is directed against the "felony murder" rule which is incorporated in Guam Penal Code § 189 (based on California Penal Code § 189).[1] The trial court instructed on felony-murder liability, and reinstructed on the rule in response to notes from one or more jurors. Root contends that the rule is unconstitutional under the Eighth Amendment of the United States Constitution. He also asserts that the felony-murder rule as applied in this case denied him due process of law.

We have found no federal case holding the felony-murder rule unconstitutional per se. The rule has been criticized by some commentators.[2] Despite (or perhaps because of) its antiquity, it is controversial.[3] We have no occasion, however, to debate the wisdom of the rule.

■ Nothing in the United States Constitution deprives legislatures of the power to impose upon those who kill their victims in the course of inherently dangerous felonies the same sanctions they choose for those who kill their victims after meditation sufficient to satisfy the jurisdiction's definition of first-degree murder.

Root's as-applied argument raises additional issues.

■ First, he says that the felony-murder statute did not forewarn him that he might be found liable as a principal in a felony murder when his was not the hand that delivered the fatal blow. It is true that the warning he seeks is not found in Guam Penal Code § 189, but it is found in § 31 (defining principals). This point is not well taken.

Next, Root argues that the felony-murder rule denies him due process of law because it removes the connection between moral culpability and criminal liability. He says that the felony-murder statute permits malice, an ingredient of the crime of first-degree murder, to be established by inference and that the supplying in this manner of a key element of the crime deprives him of the right to have the government prove all elements of the crime.

■ A criminal statutory presumption is irrational, arbitrary, and hence unconstitutional, unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact upon which it is made to depend. *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 23 L.Ed.2d 57

---

1. Guam Penal Code § 189. *Degrees of Murder.*

"All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing; or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or kidnaping is murder of the first degree; and all other kinds of murders are of the second degree."

2. *E. g.,* Recent Developments, *California Rewrites Felony Murder Rule,* 18 Stan.L.Rev. 690 (1966).

3. See Holmes, *The Common Law* 59 (1881).

(1969). Root seeks to apply a due-process rule against presumptions to the felony-murder rule by assuming that his felony-murder liability is founded upon a presumption or an inference that he intended to *kill* (not merely to rob) the servicemen. Root misconstrues the Guam statutory scheme.

Section 187 defines "murder" as "the unlawful killing of a human being, with malice aforethought." Section 188 states that malice is implied "when the circumstances attending the killing show an abandoned and malignant heart." [4]

■ The statutory scheme has never required a preformed malicious intent *to kill* to sustain a felony-murder conviction. If Root had an "abandoned and malignant heart" during the commission of the robbery, he had all the "malice aforethought" contemplated by §§ 187 and 189. The facts of this case reveal in Root such a state of mind.

The wording of the statute reflects in the disjunctive that there are two ways to commit first-degree murder: (1) killing with deliberate premeditation, and (2) killing accidentally, recklessly, wantonly, or incidentally in the furtherance of the perpetration of one of the specific *dangerous* felonies named in the statute. *See People v. Washington,* 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130 (1965). (Dangerous felonies defined elsewhere may create a second-degree murder problem, but that is not before us.) There was no error in the instruction on the statutory felony-murder rule.

■ Root also asserts that his sentence to life imprisonment is greatly disproportioned to his participation in the crime committed. This point is frivolous. Several states still prescribe life imprisonment as a permissible penalty

for armed robbery,[5] and we have been furnished no reason to tell the Guam legislature that its appraisal of the gravity of the crime that Root committed is unconstitutional.

■ Root also contends that the decision to try him while permitting San Augustin to avoid prosecution constitutes a denial of equal protection of the laws. This point is also frivolous.[6] Root was prosecuted because there was relevant, material, and admissible evidence available to convict him. Such evidence was not available against San Augustin. Under the law of Guam, San Augustin could not be tried, because there was no evidence to connect him with the crimes except the testimony of his accomplice. Guam Penal Code § 1111.

■ Finally, Root argues that he was entitled to have the court instruct the jury, *sua sponte,* that they could find that he withdrew from the scheme before the murders were committed and, if so, that he was not guilty. The failure to give such an unrequested instruction was not plain error because the record does not support the instruction. Root testified that he dragged the victims' bodies into a bunker and personally stripped them of all valuables, and that he and San Augustin shared the loot. Thus, Root's alleged withdrawal from the enterprise, by his own testimony, was followed by his immediate re-entry.

■ Another argument is that the judge should have given instructions on manslaughter and second-degree murder because of Root's testimony about his diminished mental capacity from smoking marijuana. Here, the only evidence in the record tends to establish that Root was not the "trigger" man. Accordingly, the materiality of Root's mental ca-

4. Guam Penal Code § 188. *Malice defined.* "Such 'malice' may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

5. *E. g.,* Cal.Penal Code § 213 prescribes a punishment of 15 years to life for robbery with harm to the victim; Idaho Code § 18–6503, not less than five years to life for robbery.

6. *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

pacity would relate only to his participation in the kidnapping and robbery. That matter was considered by the jury under other instructions not shown to be erroneous. Root was not entitled to manslaughter or second-degree instructions.

Affirmed.

KILKENNY, Circuit Judge (specially concurring):

In these circumstances, in my opinion, it was error for the court to give the unqualified instruction on the effect of the Guam felony murder statute. However, the evidence of appellant's guilt is so overwhelming that the error in giving the instruction was harmless under the mandate of Rule 52(a), F.R.Crim.P. Consequently, I concur in the result of the majority opinion.