[No. 45102. En Banc. December 28, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. YVONNE
WANROW, *Petitioner.*

302

*Elizabeth M. Schneider, Susan B. Jordan, Cumings, Jordan & Morgan, Mary Alice Theiler,* and *Smith, Kaplan, Withey, Ford & Theiler,* for petitioner.

*Donald C. Brockett, Prosecuting Attorney,* and *Fred J. Caruso, Deputy,* for respondent.

*Mark Leemon, Richard A. Hansen,* and *Robert C. Boruchowitz* on behalf of Seattle–King County Public Defender Association, *Ronald L. Hendry* on behalf of Washington Association of Prosecuting Attorneys, and *Jeremy Randolph, Prosecuting Attorney for Lewis County,* amici curiae.

HOROWITZ, J.—Petitioner Yvonne Wanrow seeks review of the denial of her motion to dismiss count 1 of the information charging her with second–degree (felony) murder. She asks this court to consider once again applying the doctrine of merger to the crime of second–degree felony–murder, *i.e.,* that the assault resulting in the homicide is merged with the homicide so as to lose its separate identity, and accordingly to hold that a death resulting from a felonious assault cannot be felony–murder. We have twice before considered and rejected this doctrine. *State v. Harris,* 69 Wn.2d 928, 421 P.2d 662 (1966); *State v. Thompson,* 88 Wn.2d 13, 558 P.2d 202 (1977). We treated

the matter as settled in *State v. Roberts,* 88 Wn.2d 337, 344 n.4, 562 P.2d 1259 (1977). In *Harris* and *Thompson,* strong dissents suggested the merger doctrine was a desirable policy in face of the harsh results of the felony–murder rule. We recognize that the consequences under our statutes of death resulting from an assault—criminal liability for felony–murder—are harsh. Nonetheless, we are now firmly convinced that adoption of the merger doctrine is not compelled either by principles of sound statutory construction or by the state or federal constitutions, and that adoption of the doctrine by this court would be an unwarranted and insupportable invasion of the legislative function in defining crimes. We therefore reaffirm this court's refusal to apply the doctrine of merger to the crime of felony–murder in this state.

In August 1972 petitioner Wanrow shot William Wesler, a man much larger than herself, who had entered the home in which Ms. Wanrow was staying, unexpectedly, without permission of the occupants, intoxicated, and under circumstances suggesting the existence of a real threat to the safety of the children and women occupying the home. These circumstances are set out in full in *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977). Mr. Wesler died and petitioner was subsequently charged with second–degree murder and first–degree assault. Petitioner was convicted of these charges, but her conviction was reversed on appeal. We affirmed that reversal on the ground that certain evidence was improperly admitted at trial. *State v. Wanrow, supra.* The majority opinion also set out a second ground for reversal, that the jury was not properly instructed on Ms. Wanrow's defense of self–defense. We emphasized that Ms. Wanrow, a small woman who was partially disabled at the time and whose children were present in the home, must be allowed to present to the jury her perception of the situation that night, "including those perceptions which were the product of our nation's 'long and unfortunate history of sex discrimination.' *Frontiero v. Richardson,* 411 U.S. 677, 684, 36 L. Ed. 2d 583, 93 S. Ct. 1764 (1973)."

*State v. Wanrow, supra* at 240. Petitioner's case was remanded for a new trial.

It was on remand, prior to commencement of the trial, that petitioner moved for dismissal of count 1 of the information, charging her with the crime of second–degree (felony) murder. She raised the entirely separate and distinct question of the merger doctrine, that is, whether a death resulting from a felonious assault can be a felony–murder. Her motion to dismiss was denied. We accepted discretionary review of the order of denial, and we affirm.

Count 1 of the information alleges Ms. Wanrow committed homicide on William Wesler while engaged in the commission of a second–degree assault on him. Since second–degree assault is a felony, a resulting homicide becomes second–degree felony–murder under RCW 9.48.040(2).

At this point a brief description of the applicable statutory scheme is necessary. The homicide statute applicable in this case is the old RCW 9.48 (now superseded as to all acts committed on or after July 1, 1976, by RCW 9A.32). In that scheme, all punishable homicides are either murder (first– or second–degree) or manslaughter. Murder in the first degree includes both premeditated murder and homicides committed in the course of certain felonies (first–degree felony–murder). RCW 9.48.030. Murder in the second degree includes both intentional but unpremeditated homicides, and homicides committed in the course of all other felonies (second–degree felony–murder). Petitioner is charged under this latter section. RCW 9.48.040(2). Manslaughter is all other nonjustified or nonexcused homicides. RCW 9.48.060. A homicide is manslaughter under this statute when the act resulting in death is unlawful but not felonious, and when the killing is unintentional. *State v. Sill,* 47 Wn.2d 647, 289 P.2d 720 (1955).

The felony alleged in this case is second–degree assault. The statute is RCW 9.11.020 (now superseded by RCW 9A.36). The relevant portion of the statute is as follows:

RCW 9.11.020 Assault in the second degree . . . Every person who, under circumstances not amounting to assault in the first degree—

. . . 
(4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm . . .

. . . 
Shall be guilty of assault in the second degree . . .

Under the second section of the second–degree murder statute, a second–degree assault which results in death becomes murder in the second degree. RCW 9.48.040(2). The second–degree murder statute is as follows:

RCW 9.48.040 Murder in the second degree. The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—
(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; or
(2) When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a felony other than those enumerated in RCW 9.48.030 [the first–degree murder statute].

In this case the alleged assault on William Wesler is the felony giving rise to the charge of second–degree felony–murder. The assault is also the same act which caused his death. Thus, the felony underlying the murder charge is the very act which constitutes the murder. The proposed rule of construction known as the merger doctrine, as has been pointed out, is that an assault resulting in a homicide is merged with the homicide so that it no longer remains a separate and distinct assault. Since there is therefore no separate felonious assault, there is no basis for felony–murder. The crime, if proved, is a homicide, but not felony–murder. If the merger doctrine just described were applied to these statutes, the result would be that the facts alleged in the information would not show a felony–murder in the second degree, but would constitute only manslaughter, that is, "[a]ny homicide other than, murder in the first degree, or murder in the second degree, and not being excusable or justifiable." RCW 9.48.060. This would create

a new category of manslaughter, *i.e.,* where the death results from a *felonious* assault, contrary to this court's construction of the manslaughter statute in *State v. Sill, supra.* It is petitioner's contention that this court is compelled, both as a matter of sound statutory construction and by constitutional law, to apply the merger doctrine and classify the crime alleged here as manslaughter. We decline to overrule *State v. Sill* or apply the merger doctrine, for the reasons stated hereafter.

I

Petitioner urges this court to adopt the merger doctrine as a matter of statutory construction where the underlying felony is second–degree assault. She contends adoption of the doctrine is necessary in order to make sense of the statutory scheme and preserve the basic distinctions among various crimes of homicide. A close reading of the homicide statute fails to support her position.

■ Petitioner's arguments that the merger doctrine is necessary are complex and varied, but most rely on the basic and erroneous assumption that intent to kill is an element of second–degree felony–murder under RCW 9.48-.040(2). We can think of no simpler or clearer way to state it: intent to kill is *not* an element of second–degree felony–murder. *See New York Life Ins. Co. v. Jones,* 86 Wn.2d 44, 541 P.2d 989 (1975). The theoretical basis of felony–murder is that general malice (not intent to kill) may be inferred from the malicious felonious intent which must be present to prove the underlying felony. Where malice is present and homicide results, felony–murder may be shown. Intent to kill is not the sine qua non of felony–murder, either historically or in this statutory scheme.

Thus, in order to prove second–degree felony–murder in this case the State must prove: (1) that petitioner committed an assault in the second degree under RCW 9.11.020(4) (willful assault on another with a weapon likely to produce harm), and (2) that the homicide was perpetrated while

petitioner was engaged in the commission of the assault. No intent to kill need be shown.

We must therefore reject petitioner's numerous arguments that the statutory scheme is distorted if the merger doctrine is not applied, which are based on the assumption that intent to kill is a necessary element of second–degree felony–murder.

■ Petitioner further argues, however, that the second–degree murder statute itself does not make sense unless the merger doctrine is applied. The argument is that without the merger doctrine, any homicide, intentional or not, can be proved as a second–degree murder under subsection (2) of RCW 9.48.040 by alleging a willful assault. Thus, it is claimed subsection (1) of RCW 9.48.040, which defines second–degree murder where the homicide is unpremeditated but committed with intent to kill, is rendered meaningless, because the State will never need to allege or prove intent to kill.

It is true that where a willful assault has resulted in death, a prosecutor can allege and prove second–degree felony–murder under subsection (2) and not have to show intent to kill. This does not, however, render subsection (1) meaningless, because there are many conceivable circumstances in which an intent to kill is both present and clearly manifested. In these circumstances the State may properly charge under subsection (1). In practice it may be that most second–degree murders are proved through subsection (2), but as long as clear cases of unpremeditated acts with a manifest intent to kill are conceivable, subsection (1) is not meaningless.

Our conclusion that the merger doctrine is not necessary to make sense of the statutory scheme, and should therefore be rejected, was the reason this court declined to adopt the doctrine in *State v. Harris, supra.* The legislature has taken no steps to change the *Harris* rule. Other states which have declined to adopt the merger doctrine have also done so on the grounds it was not required by their statutes. *See Baker v. State,* 236 Ga. 754, 225 S.E.2d 269

(1976); *People v. Viser,* 62 Ill. 2d 568, 343 N.E.2d 903 (1975); *Hilliard v. Texas,* 513 S.W.2d 28 (Tex. Crim. App. 1974); *Robles v. State,* 188 So. 2d 789 (Fla. 1966). In fact, the early cases adopting the doctrine, in New York, Missouri and Kansas did so in order to avoid the wholly unacceptable result, under the applicable statutory scheme of the state involved, that all homicides not justified or excused become first–degree murder. *See State v. Clark,* 204 Kan. 38, 460 P.2d 586 (1969), discussing *State v. Fisher,* 120 Kan. 226, 243 P. 291 (1926); *People v. Moran,* 246 N.Y. 100, 158 N.E. 35 (1927); *State v. Shock,* 68 Mo. 552 (1878). We are not faced with such a faulty statutory scheme here.

 More recently state courts adopting the doctrine have purported to follow the reasoning of the early cases, but have not shown their statutes are similar to the statutes construed in the early cases. *See Massie v. State,* 553 P.2d 186 (Okla. Crim. App. 1976); *People v. Ireland,* 70 Cal. 2d 522, 450 P.2d 580, 75 Cal. Rptr. 188 (1969); *State v. Branch,* 244 Ore. 97, 415 P.2d 766 (1966); *State v. Essman,* 98 Ariz. 228, 403 P.2d 540 (1965). It can be assumed these courts were persuaded the doctrine was desirable as a policy matter, as a step toward limiting the scope of the admittedly harsh felony–murder rule. Such a rationale for application of the rule is popular with commentators. See, for example, Comment, *The Merger Doctrine as a Limitation on the Felony–Murder Rule: A Balance of Criminal Law Principles,* 13 Wake Forest L. Rev. 369 (1977).

Nonetheless, the intent of the legislature to punish those who commit a homicide in the course of a felony under the applicable murder statute is clear. There is no basis for assuming the rule was not meant to apply where the underlying felony is assault. Furthermore, the felony–murder rule itself has a firm historical basis in the criminal law, and the authority of the legislature to adopt the rule, apart from the constitutional objections we consider next, is not questioned. We find the suggested policy basis for applying

the merger doctrine under these circumstances both inadequate to override the legislative intent clearly expressed in the homicide statute and an invasion of legislative power to define crimes.

## II

Petitioner next contends this court is required as a matter of constitutional law to adopt the merger doctrine in cases where second–degree assault is the underlying felony. Her constitutional arguments, we note, are applicable to the operation of the felony–murder rule generally, and are not confined in theory to cases where the underlying felony is assault. Her attack is thus on the constitutionality of the felony–murder rule per se.

In the majority decision in *State v. Thompson, supra,* in which we rejected for a second time the application of the merger doctrine to our homicide statutes, we acknowledged explicitly the view that the merger doctrine did not involve constitutional issues. *State v. Thompson, supra* at 17. A strong dissent disagreed, raising the very constitutional questions petitioner urges now. Our holding, which implicitly rejected the constitutional arguments, was appealed to the United States Supreme Court under 28 U.S.C. § 1257(2), an appeal available *as of right* when properly taken. The appellant there alleged RCW 9.48.040(2) unconstitutionally deprived her of due process and equal protection of the laws, the very constitutional grounds now urged by petitioner Wanrow. The appeal was dismissed in October 1977 after discretionary review of petitioner Wanrow's motion was granted by this court, "for the want of a substantial federal question." *Thompson v. Washington,* 434 U.S. 898, 54 L. Ed. 2d 185, 98 S. Ct. 290 (1977).

The United States Supreme Court has unequivocally ruled that a summary dismissal of an appeal under section 1257(2) for want of a substantial federal question is a decision on the merits. *Hicks v. Miranda,* 422 U.S. 332, 45 L. Ed. 2d 223, 95 S. Ct. 2281 (1975). That court's dismissal of the appeal in *Thompson* is therefore binding on this court

as a decision on the merits of the federal constitutional issues of due process and equal protection raised there. Petitioner maintains the *Thompson* dismissal should not be so construed, that the constitutional issues there were not properly raised and the dismissal could therefore not be a dismissal on the merits. We cannot agree.

The question whether a constitutional issue was properly raised goes to the jurisdiction of the United States Supreme Court over the appeal. Where that court dismisses, on the merits, for want of a substantial federal question on such an appeal, it has obviously already decided the jurisdictional question itself. We cannot disregard its decision on jurisdiction and independently determine whether that court had jurisdiction or not. As explained in *Hicks v. Miranda, supra* at 344, the Supreme Court of the United States has no discretion to refuse adjudication when an appeal is properly presented under section 1257(2). It is not, however, required to give the appeal plenary consideration. A summary dismissal for want of a substantial federal question is thus the method by which the court dismisses the appeal on the merits. *Hicks v. Miranda, supra.* Petitioner maintains that *Maryland & Virginia Eldership of Churches of God v. Church of God,* 396 U.S. 367, 24 L. Ed. 2d 582, 90 S. Ct. 499 (1970), is authority for the proposition that the United States Supreme Court may dismiss for want of a substantial federal question when the state court disposed of the issue on state grounds, where no federal question was properly raised. However, that case was not disposed of summarily, as was *Thompson.* A decision was filed in the case, and even though that decision ends with the phrase "dismissed for want of a substantial federal question," it is not controlling authority for the proposition that a case *summarily* dismissed on those grounds is not a decision on the merits. *Hicks v. Miranda, supra,* on the other hand, is controlling authority for the proposition that such a dismissal, when summary, is a decision on the merits. We

therefore deem the action of the court on the *Thompson* appeal controlling as to the constitutional issues raised there.

■ Even if *Thompson* were not controlling on the constitutional questions, however, we would reach the same result, for we find no violation of due process or equal protection in the felony–murder rule.[1]

Petitioner's due process argument is once again based on the erroneous assumption that intent to kill is a necessary element of second–degree felony–murder. The felony–murder rule, she argues, conclusively presumes the existence of an intent to kill from the existence of the malicious felonious intent, in this case, an intent to commit assault. This conclusive presumption, it is argued, shifts the burden of proof to petitioner to prove the lack of intent to kill, requiring her to come forward and testify, and thereby infringing on her privilege against self–incrimination. Furthermore petitioner argues, since the statute does not state that intent to kill is a necessary element, the issue is not presented to the jury. This, she claims, deprives her of a fair trial and trial by jury of each element of the crime.

Petitioner's argument once again ignores the fact that intent to kill is not an element of second–degree felony–murder. *See New York Life Ins. Co. v. Jones, supra.* The intent necessary to prove the felony–murder is the intent necessary to prove the underlying felony. That intent must be proved by the State as a necessary element of the crime, and the question whether it was present is presented to the jury. The argument that the felony–murder presumes the existence of intent to kill misconstrues the nature of the felony–murder rule and must be rejected. Both state and federal courts have rejected the argument that the felony–murder rule presumes the existence of an intent to kill, or

---

[1]The approach we take is consistent with the opinions of Justices Blackmun and Rehnquist in *Lockett v. Ohio,* 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978) (Blackmun, J., concurring in part and concurring in the judgment, at 594 n.2; Rehnquist, J., concurring in part and dissenting, at 628).

any other intent necessary for the crime of murder, in violation of the due process clause. *Westberry v. Murphy,* 535 F.2d 1333 (1st Cir. 1976), *cert. denied,* 429 U.S. 889 (1977); *People of the Territory of Guam v. Root,* 524 F.2d 195 (9th Cir. 1975), *cert. denied,* 423 U.S. 1076, 47 L. Ed. 2d 86, 96 S. Ct. 861 (1976); *U.S. ex rel. Rock v. Pinkey,* 430 F. Supp. 176 (N.D. Ill. 1977); *State v. Nowlin,* 244 N.W.2d 596 (Iowa 1976); *Warren v. State,* 29 Md. App. 560, 350 A.2d 173, *review denied,* 278 Md. 738 (1976).

By contrast, petitioner has cited no case, and we know of none, which holds the felony–murder rule violates due process, the privilege against self–incrimination or the right to trial by jury.

Petitioner also argues that the felony–murder rule gives the prosecutor an unconstitutional degree of discretion to choose the statute under which her acts will be prosecuted in violation of equal protection guaranties. Under the facts of this case, she points out, the prosecutor could charge second–degree assault, manslaughter or second–degree murder. Petitioner relies on *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956) in which we held that a statute which prescribes different degrees of punishment for the same acts committed under the same circumstances by persons in similar situations violates equal protection.

We have also held, however, that no constitutional defect exists when the crimes which the prosecutor has discretion to charge have different elements. *State v. Reid,* 66 Wn.2d 243, 401 P.2d 988 (1965). That is the case here. Although the events giving rise to the prosecution of petitioner may support charges for varying crimes carrying varying punishments, the elements of those crimes are different. Proof of the elements of one does not constitute proof of the elements of another. Nor does it violate petitioner's right to equal protection that the prosecutor may choose to enforce one criminal statute against her and not another. The discretion vested in the prosecutor to selectively enforce criminal statutes is not unconstitutional if not based on unjustifiable standards. *State v. Lee,* 87

Wn.2d 932, 558 P.2d 236 (1976). Petitioner does not contend the decision to prosecute her in this case was based on arbitrary, unreasonable, or otherwise insupportable grounds. We therefore conclude she has not been denied equal protection.

The order below denying petitioner's motion to dismiss count 1 of the indictment against her is affirmed and the case is remanded for further proceedings.

ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, and DOLLIVER, JJ., concur.

HICKS, J. (concurring)—Were I a member of the legislature, I would vote to adopt the merger rule where assault is the precedent felony in a felony–murder charge, for that seems the fairer rule to me. Nonetheless, I concur in the result in this case for the reason set forth in *State v. Thompson,* 88 Wn.2d 13, 17–18, 558 P.2d 202 (1977), where we stated:

> While it may be that the felony murder statute is harsh, and while it does relieve the prosecution from the burden of proving intent to commit murder, it is the law of this state. The legislature recently modified some parts of our criminal code, effective July 1, 1976. However, the statutory context in question here was left unchanged.
>
> The rejection by this court of the merger rule has not been challenged by the legislature during the nearly 10 years since *Harris* [*State v. Harris,* 69 Wn.2d 928, 421 P.2d 662 (1966)] . . .

While the legislature did not adopt the merger rule following *Harris,* it had an opportunity to do so when it substantially modified the state criminal code effective July 1, 1976. Therefore, I view this case in the same light as one coming within our rule that following this court's construction of a statute, its reenactment without change indicates legislative approval of the construction. Consequently, I believe that if the merger rule is to be adopted for a felony–murder case where assault is the precedent felony, the legislature, rather than this court, should make the change.

UTTER, J. (dissenting)—I dissent from the majority which construes our second–degree felony–murder statute in a way I believe denies the defendant both due process and equal protection guaranteed by the state and federal constitutions. Many of my reasons for so believing are stated in my dissent in *State v. Thompson,* 88 Wn.2d 13, 18, 558 P.2d 202 (1977).

I will not attempt to restate each of the points made in that dissent. In that case, as here, neither necessity nor previous cases compel the result reached by the majority. I will point out only the special areas of disagreement I have with the present opinion.

First and most important, despite the majority's conclusion to the contrary, this case, coming soon after our decision in *Thompson,* both demonstrates and insures that a specific intent to kill is no longer a meaningful part of the second–degree murder provision. Heretofore RCW 9A.32-.050(1) has reflected this state's conformance with the accepted view that specific intent murder, without the added ingredients of premeditation and deliberation, is the first element of murder in the second degree. *See* W. LaFave & A. Scott, *Handbook on Criminal Law* 568 (1972). But there is no prosecutor with knowledge of the law who would undertake to prove the existence of such a specific intent when the absence of the mental element will make no legal difference to the disposition of the case. Thus, the practical effect of the majority's decision here makes the statutory provision a historic relic, abandoned by prosecutors to a simple proof of second–degree assault with resulting death.

Second, I believe the majority cannot correctly assume that the legislature intends the felony–murder rule to apply to an underlying felony of assault. The existence of a scheme of homicide provisions, varying in penalties with the degree of a defendant's culpability, and including manslaughter provisions more appropriate to the unintentional homicide considered here than is the felony–murder provision, manifests a legislative purpose reserving the felony–

murder rule for felonies not included–in–fact within the homicide itself. The majority construction of the felony–murder provision frustrates rather than furthers the legislature's purpose in enacting these homicide statutes.

Third, I cannot agree with the implication by the majority that adoption of the merger doctrine would require overruling *State v. Sill,* 47 Wn.2d 647, 289 P.2d 720 (1955). *Sill* was a case in which the defendant was convicted of manslaughter and appealed that conviction. The court, in setting out the nature of the crime, noted manslaughter to be an unintentional killing "by one committing an unlawful, but not felonious, act." *Sill,* at 651. To the extent this short remark apparently distinguished manslaughter from murder, it was wholly dicta to the decision, since at issue was whether the defendant would be acquitted of the manslaughter charge—not whether he should have been found guilty of murder.[2] Thus *Sill* need not be overruled in turning away from the mistaken course the majority has chosen in *Thompson.*

Finally, the cases cited by the majority from other jurisdictions to suggest the same result has been reached by these jurisdictions, are not, I believe, strong support for the propositions for which they are cited. In *Robles v. State,* 188 So. 2d 789 (Fla. 1966), the application of the felony–murder doctrine was predicated upon the defendant's commission of *burglary,* during the course of which he stabbed to death the victim. While the burglary itself was in part predicated upon an intent to commit felonious assault within the victim's home, the Florida court's opinion demonstrates that it was the defendant's conduct not included–in–fact within the homicide which permitted a verdict of felony–murder. Indeed, the court emphasized that the Florida statutes precluded assault from serving as a foundation to felony–murder, and thus there was no need

---

[2] *State v. Turpin,* 158 Wash. 103, 290 P. 824 (1930), cited by the court in *Sill* for the definition of manslaughter, similarly arose from a verdict of manslaughter, to which any distinction between manslaughter and murder would be irrelevant.

for judicial adoption of the merger doctrine. The majority's use of *Baker v. State,* 236 Ga. 754, 225 S.E.2d 269 (1976), also does not support its cause. In that case, the Georgia court concluded that unique features of the Georgia homicide statutes precluded it from adopting the merger doctrine. Georgia's manslaughter provisions are expressly so narrow, the court found, that to find no guilt could attach under the felony–murder provision would result in the defendant's freedom from any charge of homicide. The court proceeded to note that where the manslaughter statutes are those of the "reckless" or "negligent" homicide type, precisely those we have in Washington, RCW 9A.32-.060(1)(a) and 9A.32.070, a court may adopt a merger analysis.[3]

I believe the majority does not succeed in making its case. The view adopted by the majority here, as in *Thompson,* remains at odds with a broad construction of the enacted scheme of homicide provisions. Already the first scholarly review of *Thompson* has registered a distinct criticism of the result reached there. Comment, *An Assault Resulting in Homicide may be Used to Invoke the Felony–Murder Rule,* 13 Gonzaga L. Rev. 268 (1977).

For these reasons I dissent.

WRIGHT, C.J., concurs with UTTER, J.

Reconsideration denied February 28, 1979.

---

[3]In a subsequent case, *Malone v. State,* 238 Ga. 251, 232 S.E.2d 907 (1977), the same Georgia court held that commission of voluntary or involuntary manslaughter under the state's statutes will *not* invoke the felony–murder rule as to the death of the main victim.