242 N.J. Super. 584 (1990)
577 A.2d 1273
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH R. ERVIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 1990.
Decided June 29, 1990.
*585 Before Judges MICHELS, COHEN and BROCHIN.
John R. Ford argued the cause for appellant (Rudnick, Waldman, Ford, Addonizio & Pappa, attorneys; John R. Ford, on the brief).
Ann S. Williams, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Ann S. Williams, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
N.J.S.A. 2C:35-9 declares that any person who illegally manufactures, distributes or dispenses any of a list of illegal drugs "is strictly liable for a death which results from the injection, inhalation or ingestion of that substance, and is guilty of a crime of the first degree." In this case, the defendant challenges the constitutionality of that statute.[1] We disagree with his argument and therefore affirm.
Defendant Joseph R. Ervin procured cocaine which he and his girlfriend shared. She died as the result. He was indicted for *586 possessing cocaine contrary to N.J.S.A. 2C:35-10a(1) and N.J.S.A. 2C:35-10a(3), possessing cocaine with the intent of distributing it contrary to N.J.S.A. 2C:35-5b(3), distributing cocaine contrary to N.J.S.A. 2C:35-5b(3), causing a drug induced death contrary to N.J.S.A. 2C:35-9 and for manslaughter contrary to N.J.S.A. 2C:11-4b.
On the ground that N.J.S.A. 2C:35-9 is unconstitutional, defendant moved before the trial court to dismiss the charge of having caused a drug induced death. His motion was denied. Pursuant to a plea bargain, he pleaded guilty to the charge of violating N.J.S.A 2C:35-9, and the remaining counts of the indictment were dismissed. He was sentenced to ten years' imprisonment.
Having reserved his right to appeal from the denial of his motion to dismiss the count of the indictment against him which charged him with having caused a drug induced death in violation of N.J.S.A. 2C:35-9, defendant now pursues his argument against the constitutionality of the statute before this court. He contends that the strict or absolute liability feature of the statute violates due process of law and exceeds the Legislature's power to create a strict liability crime, and the law also violates the State and Federal constitutional prohibitions against cruel and unusual punishments, U.S. Const., Amend. VIII and N.J. Const. (1947), Art. I, par. 12.
N.J.S.A. 2C:35-9 was adopted as part of the Comprehensive Drug Reform Act of 1987, N.J.S.A. 2C:35-1 et seq. and following. The absolute liability or "transferred intent" feature of the criminal homicide which it created was modeled on and is similar to the same element in felony murder law.[2] Because of the similarity, cases which have considered constitutional *587 challenges to felony murder statutes on grounds similar to those posed by the defendant in the present case are relevant to our decision. The Official Commentary to the Comprehensive Drug Reform Act (L. 1987, c. 106, 9 Criminal Justice Quarterly, 149, 159-160 (1987), describes the felony murder model and its similarities to the crime proscribed by N.J.S.A. 2C:35-9 as follows:[3]
The offense defined in this section is somewhat similar to the `felony murder'[[4]] provisions developed at common law[[5]] and which are now codified in Chapter 11 of the penal code.[[6]] The penal code currently provides, for example, that criminal homicide constitutes murder when the defendant, acting either alone or with one or more other persons, is engaged in the commission of, attempt to commit or immediate flight after committing certain enumerated crimes, and in the course of such crime or flight therefrom causes the death of a person other than one of the participants. N.J.S.A. 2C:11-3a(3). It is well-established that the State need not prove in such a prosecution that the death was purposely, knowingly or recklessly committed. Rather a wholly unintended killing constitutes murder if it results from the commission of the underlying felony.[[7]] It is equally well-settled that a participant may be *588 convicted of murder under this theory even if the victim dies as a consequence of a shot fired by a police officer who was attempting to apprehend the fleeing felon. In other words, it is generally not a defense to a prosecution for felony murder that the death was directly caused by the volitional act of another. Current law thus establishes an unambiguous warning for accountability for even unintended deaths which are closely connected with the commission of certain inherently dangerous crimes.[[8]] The offense defined in this section posts a similar warning to all drug manufacturers and dealers.
No reported New Jersey case has expressly considered the argument that because conviction of felony murder does not require the perpetrator of the crime to have acted "purposely" or "knowingly," cf. N.J.S.A. 2C:11-3a(1) and (2), our felony murder statute violates the due process clause or some other constitutional provision. However, the numerous reported cases which have affirmed convictions for felony murder have implicitly assumed the constitutionality of the statute. But in jurisdictions where the constitutionality of a felony murder statute has been questioned on the ground that it required no mental culpability other than that which is a prerequisite for conviction of the predicate felony, the argument has been rejected. See People v. Benson, 125 Misc.2d 843, 480 N.Y.S.2d 811 (N.Y. Sup. Ct. 1984) and cases cited therein. See also Westberry v. Murphy, 535 F.2d 1333 (1st Cir.), cert. den. 429 U.S. 889, 97 S.Ct. 245, 50 L.Ed.2d 172 (1976); People of Territory of Guam. v. Root, 524 F.2d 195, 197-198 (9th Cir 1975), cert. den. 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976); State v. Crump, 232 Kan. 265, 654 P.2d 922, 926-927 (1982); Commonwealth v. Moran, 387 Mass. 644, 442 N.E.2d 399, 401-403 (1982). In view of these decisions and of the long history and wide prevalence of felony murder statutes which dispense with the need to prove that homicides which they proscribe were committed willfully or purposely, we can proceed confidently *589 from the premise that the constitutionality of the "transferred intent" or absolute liability feature of such statutes is not in doubt.
The New Jersey Legislature has determined that manufacturing, distributing and dispensing certain illegal drugs, including cocaine which is the substance involved in the present case, are criminal activities which, like the crimes enumerated in the felony murder statute, pose inherent dangers to others including those who use the drugs.[9] Defendant has shown us no basis upon which to conclude that that determination is irrational. N.J.S.A. 2C:35-9b limits criminal liability to cases in which the defendant has illegally manufactured, distributed or dispensed a prohibited substance, death results which would not have occurred but for the injection, inhalation or ingestion of that substance, and "the death was not (a) too remote in its occurrence as to have a just bearing on the defendant's liability; or (b) too dependent upon conduct of another person which was unrelated to the injection, inhalation or ingestion of the substance or its effect as to have a just bearing on the defendant's liability." N.J.S.A. 2C:35-9. These limitations on liability are similar to those imposed on criminal liability for felony murder. N.J.S.A. 2C:11-3a(3); State v. Martin, supra, 119 N.J. 2, 28-35, *590 573 A.2d 1359, 1373-1376; but cf. State v. Whitted, 232 N.J. Super. 384, 557 A.2d 327 (App.Div. 1989). By analogy to the felony murder rule, we hold that the absolute or strict liability feature of N.J.S.A. 2C:35-9, limited as it is to deaths which are the proximate consequences of inherently dangerous illegal activities, does not violate due process of law.[10]
In State v. Ramseur, 106 N.J. 123, 169, 524 A.2d 188 (1987), the Supreme Court described as follows the tests for determining whether a statute violates the constitutional prohibition against cruel and unusual punishments:
Three inquiries are required. First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any penological objective?
We have also been told that the requisite showing to sustain a claim of cruel and unusual punishment is substantial. State v. Des Marets, 92 N.J. 62, 82, 455 A.2d 1074 (1983). Absent that showing, a reviewing court must respect the legislative will. State v. Muessig, 198 N.J. Super. 197, 201, 486 A.2d 924 (App. Div.), certif. den. 101 N.J. 234, 501 A.2d 912 (1985).
With respect to Ramseur's first two tests, whether the punishment prescribed by N.J.S.A. 2C:35-9 "conform[s] with contemporary standards of decency" and whether "the punishment [is] grossly disproportionate to the offense," we agree with the State's argument that the strongest indicator that the penalties at issue here conform with contemporary standards of decency and are not gross disproportionate to the offense is that the Legislature passed the Act only three years ago, in *591 1987. Cf. State v. Ramseur, supra, 106 N.J. at 172, 524 A.2d 188; Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
Felony murder statutes have been held to impose "cruel and unusual punishment[s]" when they prescribed the death penalty or life imprisonment with or without the possibility of parole. See e.g. Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); People v. Dillon, 34 Cal.3d 441, 668 P.2d 697, 194 Cal. Rptr. 390 (1983). On the other hand, a sentence of incarceration for two consecutive twenty year terms and $20,000 in fines for possession of marijuana with intent to distribute and distribution of marijuana was held not to violate the federal constitutional prohibition against cruel and unusual punishments. Hutto v. Davis, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982). Because N.J.S.A. 2C:35-9 creates a first degree crime, the ordinary custodial sentence for its violation is from ten to twenty years' imprisonment. N.J.S.A. 2C:43-6a(1). Even if no user is shown to have died as a result, the manufacture, distribution or dispensing of designated controlled dangerous substances, including cocaine, is a first degree offense if the quantity involved is five ounces or more and is a second degree offense if the quantity is between one-half ounce and five ounces. N.J.S.A. 2C:35-5b(1) and (2). Before the effective date of the current law, the penalties for similar offenses were up to twelve years' imprisonment for one ounce or more of a mixture including less than 3.5 grams of the illegal drug in its pure form and up to life imprisonment for larger amounts. In view of these penalties and the Legislature's declaration and findings of fact, we hold that the penalties prescribed for violation of N.J.S.A. 2C:35-9 do not fail to "conform with contemporary standards of decency" and are not "grossly disproportionate to the offense."
The third Ramseur test is whether "the punishment go[es] beyond what is necessary to accomplish any penological objective." The rationale for the strict or absolute liability established by N.J.S.A. 2C:35-9 and for its categorizing a violation as *592 a first degree offense is similar to that offered for the felony murder rule:
The historical justification for the rule [in the case of felony murder] is that it serves as a general deterrent against the commission of violent crimes. [Citation omitted.] The rationale is that if potential felons realize that they will be culpable as murderers for a death that ocurs during the commission of a felony, they will be less likely to commit the felony. From this perspective, the imposition of strict liability without regard to the intent to kill serves to deter the commission of serious crimes.
Similarly, the justification for N.J.S.A. 2C:35-9 is that it serves as a general deterrent against manufacturing, distributing and dispensing illegal drugs which the Legislature has found "pose a serious and pervasive threat to the health, safety and welfare of the citizens of this State." N.J.S.A. 2C:35-1.1b Consequently, we are of the view that the Legislature was not unreasonable in determining that the punishment which it prescribed does not "go beyond what is necessary to accomplish any penological objective." We therefore hold that N.J.S.A. 2C:35-9 does not violate the prohibitions against cruel and unusual punishments contained in our State and Federal Constitutions.
The judgment appealed from is therefore affirmed.
NOTES
[1] In State in Interest of A.J., 232 N.J. Super. 274, 293, 556 A.2d 1283 (App.Div. 1989), the issue of the constitutionality of N.J.S.A. 2C:35-9 was raised, but we declined to decide the issue because it was unnecessary to our disposition of the case.
[2] "At common law .... the intent to commit the felony, even in the absence of an intent to kill, was transferred to the death of the victim. [Citations omitted.].... More recently, felony murder has been viewed not as a crime of transferred intent but as one of absolute or strict liability." State v. Martin, 119 N.J. 2, 19, 573 A.2d 1359, 1368 (1990).
[3] The footnotes in the following quotation do not appear in the original.
[4] For a comprehensive discussion of felony murder immediately prior to the adoption of the New Jersey Criminal Code, see State v. Canola, 73 N.J. 206, 374 A.2d 20 (1977).
[5] In State v. Cooper, 13 N.J.L. 361, 370 (Sup.Ct. 1830 [reported 1833]), the court said:

It is a well established principle of the common law, that if a person, whilst doing or attempting to do another act, undesignedly kill a man, if the act done or attempted, were a felony, the killing is murder; especially if death were a probable consequence of the act.
For a detailed history of the felony murder doctrine, see People v. Aaron, 409 Mich. 672, 299 N.W.2d 304 (1980).
[6] Felony murder, in a somewhat modified form, is now incorporated in N.J.S.A. 2C:11-3a(3). See State v. Martin, 119 N.J. 2, 19-35, 573 A.2d 1359, 1368-1376 (1990).
[7] Conviction of felony murder "requires only a showing that a death was caused during the commission of (or attempted commission or flight from) one of the crimes designated in the statute. The State need not prove that the death was purposely or knowingly committed; a wholly unintended killing is murder if it results from the commission of the underlying felony." State v. Darby, 200 N.J. Super. 327, 331, 491 A.2d 733 (App.Div. 1984), certif. den. 101 N.J. 226, 501 A.2d 905 (1985). See State v. Madden, 61 N.J. 377, 384-385, 294 A.2d 609 (1972).
[8] See State v. Smith [Herbert], 210 N.J. Super. 43, 50, 509 A.2d 206 (App.Div.), certif. den. 105 N.J. 582, 523 A.2d 210 (1986); State v. Darby, supra; Cannel, Criminal Code Annotated, Comment 2C:11-3a(3).
[9] In the Comprehensive Drug Reform Act of 1987, the Legislature made the following declaration of policy and legislative findings:

Despite the impressive efforts and gains of our law enforcement agencies, the unlawful use, manufacture and distribution of controlled dangerous substances continues to pose a serious and pervasive threat to the health, safety and welfare of the citizens of this State. New Jersey continues to experience an unacceptably high rate of drug-related crime, and continues to serve as conduit for the illegal trafficking of drugs to and from other jurisdictions. In addition to the harm suffered by the victims of drug abuse and drug-related crime, the incidence of such offenses is directly related to the rate of other violent and non-violent crimes, including murder, assault, robbery, theft, burglary and organized criminal activities. For this reason, enhanced and coordinated efforts designed specifically to curtail drug-related offenses will lead inexorably to a reduction in the rate of crime generally, and is therefore decidedly in the public interest. N.J.S.A. 2C:35-1.1b.
[10] Even before adoption of N.J.S.A. 2C:35-9, this court held that a defendant who sold heroin to a drug user who died from an overdose could be convicted of manslaughter because the court was "satisfied that there can be imputed to defendant either knowledge or reckless disregard of the consequence of his act, and that the jury could have reasonably found from the proofs that beyond a reasonable doubt the regular, natural and likely consequence of the sale of heroin was the user's death." State v. Thomas, 118 N.J. Super. 377, 380, 288 A.2d 32 (App.Div.), certif. den. 60 N.J. 513, 291 A.2d 374 (1972).