No. 56,469

STATE OF KANSAS, *Appellant,* v. EDWARD F. BRANTLEY, *Appellee.*

(691 P.2d 26)

Opinion filed November 30, 1984.

*David J. King,* assistant county attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Robert E. Davis,* county attorney, were with him on the brief for appellant.

*Benjamin Wood,* of Legal Services for Prisoners, Inc., of Lansing, argued the cause, and *Eric A. Stahl,* of the same organization, was with him on the brief for appellee.

*Susan O. Nugent,* legal counsel for the Kansas State Industrial Reformatory, of Hutchinson, was on the brief *amicus curiae.*

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by the State under K.S.A. 22-3602(b)(1) from an order of the district court dismissing a felony murder charge against defendant, Edward F. Brantley.

Defendant is an inmate at the state penitentiary in Lansing. The State's complaint alleged that on September 27, 1983, defendant stabbed and killed Lawrence Matthews, Jr., another inmate, with a knife. The first count charged defendant with felony murder, claiming the homicide occurred during defendant's possession of a weapon in a penal institution contrary to K.S.A. 21-3826, a class E felony. The second count charged defendant with a separate violation of K.S.A. 21-3826 for possession of the knife. The facts at this point are not disputed.

At the preliminary hearing, the evidence was that the defend-

ant waived his *Miranda* rights and gave a statement to prison officials. Brantley told them he had armed himself with a thirteen-inch metal homemade knife following a dispute with Matthews earlier in the day. He admitted stabbing Matthews. At the conclusion of the evidence defendant contended mere possession of a knife in violation of K.S.A. 21-3826 would not support application of the felony murder rule. Relying on our decision in *State v. Underwood*, 228 Kan. 294, 615 P.2d 153 (1980), the trial court agreed and dismissed the first count of the information, stating:

"Despite the arguments of the State, there really is no meaningful distinction between the facts in *Underwood* and the facts in this case. For reasons set forth more fully in that opinion . . . the Court does rule that in fact a felony murder charge cannot be supported by a mere possession and, therefore, the Court will dismiss Count One without prejudice to refiling as a different charge. The Court will bind over the defendant for arraignment on Count Two, finding that in fact there is probable cause to believe that he had committed the offense charged . . . possession of contraband at the Kansas State Penitentiary."

Broadly phrased, the issue on appeal is whether an inmate's possession of a weapon in violation of K.S.A. 21-3826 constitutes a collateral felony which will support application of the felony murder rule. K.S.A. 21-3401 defines first-degree murder as "the killing of a human being committed maliciously, willfully, deliberately and with premeditation *or committed in the perpetration or attempt to perpetrate any felony.*" (Emphasis added.) K.S.A. 21-3826 prohibits traffic in or unauthorized possession or distribution of contraband in penal institutions, and reads:

"Traffic in contraband in a penal institution is introducing or attempting to introduce into or upon the grounds of any institution under the supervision and control of the director of penal institutions or any jail, or taking, sending, attempting to take or attempting to send therefrom or any unauthorized possession while in aforesaid institution or distributing within any aforesaid institution, any narcotic, synthetic narcotic, drug, stimulant, sleeping pill, barbiturate, nasal inhaler, alcoholic liquor, intoxicating beverage, firearm, ammunition, gun powder, weapon, hypodermic needle, hypodermic syringe, currency, coin, communication, or writing without the consent of the warden, superintendent or jailer.

"Traffic in contraband in a penal institution is a class E felony."

Although a literal application of K.S.A. 21-3401 would allow any felony to support a charge of felony murder so long as a causal relation exists, we have never allowed the doctrine to be applied so broadly. The purpose of the felony murder doctrine is

to deter those engaged in felonies from killing negligently or accidentally, and it should not be extended beyond the rational function it was designed to serve. Thus, to invoke the felony murder rule there must be proof a homicide was committed in the perpetration of or an attempt to perpetrate a felony and that the collateral felony was one inherently dangerous to human life. *State v. Lashley,* 233 Kan. 620, 631, 664 P.2d 1358 (1983).

In *State v. Underwood,* 228 Kan. 294, we addressed the question whether the collateral felony of unlawful possession of a firearm by an ex-felon, in violation of K.S.A. 21-4204, was an inherently dangerous felony which would support application of the felony murder rule. The Court held that it would not.

Writing for the *Underwood* majority, Justice Fromme noted that the logic of the felony murder rule is based on the theory of transferred intent.

"The malicious and premeditated intent of committing the inherently dangerous collateral felony is transferred to the homicide to supply the elements of malice and premeditation without further proof. Consistent with this thinking, most courts require that the collateral felony be inherently dangerous for the felony murder rule to be applicable. [Citation omitted.]

'In the typical case of felony-murder, there is malice in "fact," express or implied; the malice is implied by the "law." What is involved is an intended felony and an unintended homicide. The malice which plays a part in the commission of the felony is transferred by the law to the homicide. As a result of the fictional transfer, the homicide is deemed committed with malice; and a homicide with malice is common law murder.' 2 Wharton's Criminal Law § 145, p. 204 (14th ed. 1979)." 228 Kan. at 303.

The court adopted the rule that the elements of the collateral felony should be viewed in the abstract, and the circumstances of the commission of the felony should not be considered in determining whether the collateral felony is inherently dangerous to human life. 228 Kan. 294, Syl. ¶ 5.

Applying this rule to the facts of *Underwood,* the majority concluded the ex-felon's possession of a firearm in violation of K.S.A. 21-4204 was not inherently dangerous to human life.

"This crime is a status crime in that it is limited to drunkards, drug addicts and ex-felons. It is *malum prohibitum.* The possession of the firearm is prohibited because a firearm in the possession of a habitual drunkard, a narcotics addict or an ex-felon is against the public policy of the State as declared by the legislature. The possession of the firearm when viewed in the abstract is not inherently dangerous to human life. This is true because it seems unlikely that mere possession, which has been defined as dominion and control over an object, and

not its use, could be undertaken in so dangerous a manner that the prohibited possession would result in murder in the first degree. The above meaning of the possession as contemplated in this firearm statute is taken from *State v. Neal*, 215 Kan. 737, 738-39, 529 P.2d 114 (1974). It appears quite impossible to find an intent in this collateral felony encompassing malice, deliberation and premeditation so as to transfer these elements to the homicide and relieve the prosecution from proof of the same. If these elements are present in the use of the firearm they are not present in the possession of the firearm. They should then be proven as elements of premeditated first degree murder by reason of the malicious and deliberate use of the gun." 228 Kan. at 303-04.

The court also considered the harsh results flowing from application of the felony murder rule, in particular the accused's inability to plead the defenses of accident, lack of malice, heat of passion and self-defense. The conclusion reached in *Underwood* was that, viewing the elements of the collateral felony in the abstract, unlawful possession of a firearm by an ex-felon is not a felony inherently dangerous to human life and will not sustain a conviction for murder in the first degree under the felony murder rule.

The State argues the basic element distinguishing this case from *Underwood* is the situs of the offense and that the security considerations prevailing in a prison render possession of contraband therein inherently dangerous to human life. Reduced to its essence, the argument is that it is proper to infer the existence of the requisite mental elements required in first-degree murder because of the accused's status as a prisoner or because of the accused's presence within the confines of the penal institutions. In the present case the State is requesting a rule which would operate to make every homicide committed by a prisoner possessing contraband murder in the first degree. To state that a person's status is the controlling factor ignores the fact that homicides "behind the walls" are as capable of occurring by accident, in self-defense or heat of passion, or without the requisite mental state, as are homicides occurring among the free population. We do not agree with the State's position. Even assuming the accused's status as an inmate is a relevant consideration, it would be unreasonable and overbroad to adopt a rule imputing the malice, premeditation and deliberation necessary for first-degree murder every time an inmate violates the rules against possession of contraband. If these mental elements exist in a particular case, it imposes no undue burden on the State to prove them, and the fiction of felony murder is unnecessary for

conviction. If these mental elements do not exist, it would be a travesty to elevate an accidental killing, or a killing in self-defense, into first-degree murder through the felony murder doctrine, thereby foreclosing an accused's ability to plead the traditional defenses and virtually insuring conviction of a crime the accused simply did not commit.

We agree with the trial court that our decision in *Underwood* is controlling. A violation of K.S.A. 21-3826, when the elements thereof are viewed in the abstract, is not a felony inherently dangerous to human life and will not support a charge of felony murder.

The judgment is affirmed.