No. 82,647

STATE OF KANSAS, *Appellee,* v. SANEXAY SOPHOPHONE, *Appellant.*
(19 P.3d 70)

Opinion filed March 9, 2001.

*Ralph J. DeZago,* of Herington, argued the cause and was on the brief for appellant. *Sanexay Sophophone,* appellant, supplemental brief pro se.

No appearance by appellee.

The opinion of the court was delivered by

LARSON, J.: This is Sanexay Sophophone's direct appeal of his felony-murder conviction for the death of his co-felon during flight from an aggravated burglary in which both men participated.

The facts are not in dispute. Sophophone and three other individuals conspired to and broke into a house in Emporia. The resident reported the break-in to the police.

Police officers responded to the call, saw four individuals leaving the back of the house, shined a light on the suspects, identified themselves as police officers, and ordered them to stop. The individuals, one being Sophophone, started to run away. One officer ran down Sophophone, hand-cuffed him, and placed him in a police car.

Other officers arrived to assist in apprehending the other individuals as they were running from the house. An officer chased one of the suspects later identified as Somphone Sysoumphone. Sysoumphone crossed railroad tracks, jumped a fence, and then stopped. The officer approached with his weapon drawn and ordered Sysoumphone to the ground and not to move. Sysoumphone was lying face down but raised up and fired at the officer, who returned fire and killed him. It is not disputed that Sysoumphone was one of the individuals observed by the officers leaving the house that had been burglarized.

Sophophone was charged with conspiracy to commit aggravated burglary, K.S.A. 21-3302; aggravated burglary, K.S.A. 21-3716; obstruction of official duty, K.S.A. 21-3808; and felony murder, K.S.A. 21-3401(b).

Sophophone moved to dismiss the felony-murder charges, contending the complaint was defective because it alleged that he and not the police officer had killed Sysoumphone and further because he was in custody and sitting in the police car when the deceased was killed and therefore not attempting to commit or even fleeing from an inherently dangerous felony. His motion to dismiss was denied by the trial court.

Sophophone was convicted by a jury of all counts. His motion for judgment of acquittal was denied. He was sentenced on all counts. He appeals only his conviction of felony murder.

Our jurisdiction is under K.S.A. 22-3601(b)(1) (maximum sentence of life imprisonment imposed).

Sophophone's counsel contends (1) *State v. Hoang*, 243 Kan. 40, 755 P.2d 7 (1988), should be overruled insofar as it allows criminal responsibility for a co-felon's death, (2) he cannot be convicted of felony murder of a co-felon caused by a police officer while he was in custody, and (3) there was not sufficient evidence to support his conviction.

Sophophone's supplemental pro se brief raises contentions 1 and 2 above and further contends that the complaint/information was fatally or jurisdictionally defective.

We consider only the question of law, upon which our review is unlimited, of whether Sophophone can be convicted of felony murder for the killing of a co-felon not caused by his acts but by the lawful acts of a police officer acting in self-defense in the course and scope of his duties in apprehending the co-felon fleeing from an aggravated burglary.

The applicable provisions of K.S.A. 21-3401 read as follows:

"Murder in the first degree is the killing of a human being committed:

. . . .

"(b) in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto."

Aggravated burglary is one of the inherently dangerous felonies as enumerated by K.S.A. 21-3436(10).

Sophophone does not dispute that aggravated burglary is an inherently dangerous felony which given the right circumstances would support a felony-murder charge. His principal argument centers on his being in custody at the time his co-felon was killed by the lawful act of the officer which he contends was a "break in circumstances" sufficient to insulate him from further criminal responsibility.

This "intervening cause" or "break in circumstances" argument has no merit under the facts of this case. We have held in numerous

cases that "time, distance, and the causal relationship between the underlying felony and a killing are factors to be considered in determining whether the killing occurs in the commission of the underlying felony and the defendant is therefore subject to the felony-murder rule." See, *e.g. State v. Kaesontae*, 260 Kan. 386, Syl. ¶ 1, 920 P.2d 959 (1996); *State v. Rider, Edens & Lemons*, 229 Kan. 394, Syl. ¶ 4, 625 P.2d 425 (1981); *State v. Hearron*, 228 Kan. 693, Syl. ¶ 2, 619 P.2d 1157 (1980). Based on the uncontroverted evidence in this case, the killing took place during flight from the aggravated burglary, and it is only because the act which resulted in the killing was a lawful one by a third party that a question of law exists as to whether Sophophone can be convicted of felony murder.

The history of felony murder in Kansas is well chronicled in *Hoang*, 243 Kan. at 43-44, and need not be repeated here. The changes that have taken place during the 13 years since *Hoang* was decided have mainly related to enumeration of the specific inherently dangerous felonies that are subject to felony murder (K.S.A. 21-3436) and the 1992 Legislative change in K.S.A. 21-3401 to state that murder in the first degree includes the killing of a human being committed "(b) in the commission of, attempt to commit, or flight from an inherently dangerous felony . . . ." L. 1992, ch. 298, § 3.

Prior to the enumeration of specific felonies that are statutorily deemed to be inherently dangerous, appeals often turned on the question of whether the collateral felony would support the application of the felony-murder rule. We said, however, in *State v. Brantley* 236 Kan. 379, 380-81, 691 P.2d 26 (1984):

"Although a literal application of K.S.A. 21-3401 would allow any felony to support a charge of felony murder so long as a causal relation exists, we have never allowed the doctrine to be applied so broadly. The purpose of the felony murder doctrine is to deter those engaged in felonies from killing negligently or accidentally, and it should not be extended beyond the rational function it was designed to serve."

See *State v. Vontress*, 266 Kan. 248, 262, 970 P.2d 42 (1998); *State v. Thompkins*, 263 Kan. 602, 609, 952 P.2d 1332 (1998).

There was wording in *Brantley* concerning the killing being negligently or accidentally accomplished. This followed the result in *State v. Branch & Bussey*, 223 Kan. 381, 383-84, 573 P.2d 1041 (1978), where a killing was accidental but committed by Bussey during a robbery incidental to a drug deal, and we broadly stated:

"We conclude that any participant in a life-endangering felony is guilty of first degree murder when a life is taken in the course of committing or attempting to commit the felony, whether the death was intentional or accidental, or whether the participant directly caused it to occur. (See, *State v. Bey*, 217 Kan. 251, 535 P.2d 881; *State v. Turner*, [193 Kan. 189, 392 P.2d 863 (1964)]; *State v. Bundy*, 147 Kan. 4, 75 P.2d 236.)"

We have also stated that another purpose for the felony-murder doctrine "is to relieve the state of the burden of proving premeditation and malice when the victim's death is caused by the killer while he is committing another felony." *State v. Clark*, 204 Kan. 38, 43, 460 P.2d 586 (1969).

Our cases are legion in interpreting the felony-murder statute, but we have not previously decided a case where the killing was not by the direct acts of the felon but rather where a co-felon was killed during his flight from the scene of the felony by the lawful acts of a third party (in our case, a law enforcement officer).

A similar scenario took place in *State v. Murrell*, 224 Kan. 689, 585 P.2d 1017 (1978), where Murrell was charged with felony murder for the death of his co-felon who had been shot by the robbery victim who had returned gunfire from Murrell. However, Murrell was acquitted of felony murder and his appeal involved only issues relating to his other convictions. 224 Kan. at 690.

Although there were clearly different facts, we held in *Hoang*, 243 Kan. at 42-46 that felony murder may include the accidental death of a co-felon during the commission of arson. The decedents had conspired with Hoang to burn down a building housing a Wichita restaurant/club but died when they were trapped inside the building while starting the fire. Hoang was an active participant in the felony and present at the scene, although he remained outside the building while his three accomplices entered the building with containers of gasoline to start the fire.

We held, in a split decision, that the decedents were killed during the perpetration of a felony inherently dangerous to human life and there was nothing in the statute to exclude the killing of co-felons from its application. 243 Kan. at 46. It must be pointed out that the facts in *Hoang* involved the wrongful acts of a co-felon which were directly responsible for the deaths of his co-felons.

The dissent in *Hoang* noted that in previous cases the felony-murder rule had been applied only to the deaths of innocents and not to the deaths of co-felons. The result was deemed by the dissent to be contrary to legislative intent and the strict construction of criminal statutes that is required. 243 Kan. at 46-47.

With this brief background of our prior Kansas cases, we look to the prevailing views concerning the applicability of the felony-murder doctrine where the killing has been caused by the acts of a third party. The two different approaches applicable are succinctly set forth in Comment *Kansas Felony Murder: Agency or Proximate Cause?* 48 Kan. L. Rev. 1047, 1051-52 (2000), in the following manner:

> "There are two basic approaches to application of the felony-murder doctrine: the agency and proximate cause theories. The agency approach, which is the majority view, limits application of the doctrine to those homicides committed by the felon or an agent of the felon. Under such an approach, '[t]he identity of the killer becomes the threshold requirement for finding liability under the felony-murder doctrine.'
>
> "The proximate cause approach provides that 'liability attaches "for *any* death proximately resulting from the unlawful activity—even the death of a co-felon—notwithstanding the killing was by one resisting the crime.' " Under the proximate cause approach, felony murder may preclude consideration of the deceased's identity, which would make a defendant liable for all deaths caused by others during the crime. Application of the proximate cause varies greatly by jurisdiction because the statutes differ substantially. The proximate cause approach becomes controversial when the homicide is committed by someone other than the felons, but only a minority of jurisdictions follow this approach."

In Dressler, Understanding Criminal Law, § 31.07[4] Killing by a Non-Felon, pp. 471-72 (1987), the question is posed of whether the felony-murder rule should apply when the fatal act is performed by a non-felon. Dressler states:

"This issue has perplexed courts. Two approaches to the question have been considered and applied by the courts.

### "[b] The 'Agency' Approach

"The majority rule is that the felony-murder doctrine does not apply if the person who directly causes the death is a non-felon. . . .

"The reasoning of this approach stems from accomplice liability theory. Generally speaking, the acts of the primary party (the person who directly commits the offense) are imputed to an accomplice on the basis of the agency doctrine. It is as if the accomplice says to the primary party: 'Your acts are my acts.' It follows that [a co-felon] cannot be convicted of the homicides because the primary party was not the person with whom she was an accomplice. It is not possible to impute the acts of the antagonistic party—[the non-felon or] the police officer—to [a co-felon] on the basis of agency.

### "[c] The 'Proximate Causation' Approach

"An alternative theory, followed by a few courts for awhile, holds that a felon may be held responsible under the felony-murder rule for a killing committed by a non-felon if the felon set in motion the acts which resulted in the victim's death.

"Pursuant to this rule, the issue becomes one of proximate causation: if an act by one felon is the proximate cause of the homicidal conduct by [the non-felon] or the police officer, murder liability is permitted."

In 2 LaFave & Scott, Substantive Criminal Law, § 7.5(d), pp. 217-18 (1986), the author opines: "Although it is now generally accepted that there is no felony-murder liability when one of the felons is shot and killed by the victim, a police officer, or a bystander, it is not easy to explain why this is so."

The author discusses forseeability and that it is not correct to say that a felon is never liable when the death is lawful because it is "justifiable" and goes on to state:

"A more plausible explanation, it is submitted, is the feeling that it is not justice (though it may be poetic justice) to hold the felon liable for murder on account of the death, which the felon did not intend, of a co-felon willingly participating in the risky venture. It is true that it is no defense to intentional homicide crimes that the victim voluntarily placed himself in danger of death at the hands of the defendant, or even that he consented to his own death: a mercy killing constitutes murder; and aiding suicide is murder unless special legislation reduces it to manslaughter. But with unintended killings it would seem proper to take the victim's willing participation into account. . . ."

As we noted in *Hoang*, it is not very helpful to review case law from other states because of differences in statutory language; however, the high courts which have considered this precise question

are divided between the agency approach and the proximate cause approach.

The leading case adopting the agency approach is *Commonwealth v. Redline,* 391 Pa. 486, 495, 137 A.2d 472 (1958), where the underlying principle of the agency theory is described as follows:

"In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is malice and not the act of killing. The mere coincidence of homicide and felony is not enough to satisfy the felony-murder doctrine."

The following statement from *Redline* is more persuasive for Sophophone:

"In the present instance, the victim of the homicide was one of the robbers who, while resisting apprehension in his effort to escape, was shot and killed by a policeman in the performance of his duty. Thus, the homicide was justifiable and, obviously, could not be availed of, on any rational legal theory, to support a charge of murder. How can anyone, no matter how much of an outlaw he may be, have a criminal charge lodged against him for the consequences of the lawful conduct of another person? The mere question carries with it its own answer." 391 Pa. at 509.

For a listing of states whose courts have adopted the agency theory, see Annot. *Criminal Liability Where Act Of Killing Is Done By One Resisting Felony Or Other Unlawful Act Committed By Defendant,* 56 A.L.R. 3rd 239; Annot. *Application of Felony-Murder Doctrine Where Person Killed was Co-Felon,* 89 A.L.R. 4th 683, § 10[b], 11[b], 12[b].

The minority of the states whose courts have adopted the proximate cause theory believe their legislatures intended that any person, co-felon, or accomplice who commits an inherently dangerous felony should be held responsible for any death which is a direct and foreseeable consequence of the actions of those committing the felony. These courts apply the civil law concept of proximate cause to felony-murder situations. States which have so held are listed in Annot. 89 A.L.R. 4th 683 § 10[a], 11[a], 12[a].

It should be mentioned that some courts have been willing to impose felony-murder liability even where the shooting was by a person other than one of the felons in the so-called "shield" situ-

ations where it has been reasoned "that a felon's act of using a victim as a shield in compelling a victim to occupy a place or position of danger constitutes a direct lethal act against the victim." *Campbell v. State*, 293 Md. 438, 451 n. 3, 444 A.2d 1034 (1982).

It has previously been suggested that the wording in *Kaesontae*, 260 Kan. 386, Syl. ¶ 1, relating to "time, distance, and the causal relationship between the underlying felony and the killing" should be interpreted to mean we have adopted the proximate cause approach. That is not the case as this phrase is one which relates to the question of whether the killing occurs during the commission of or flight from the underlying felony. The Kansas cases which have used this wording involved situations where the court was determining if the killing was sufficiently related to the felony in terms of time, distance, and causation in order to constitute felony murder. None of those cases hold that we have adopted the proximate cause approach to the killing of a co-felon by a third party.

Nor have we adopted the proximate cause approach because of our holding and language in *State v. Shaw*, 260 Kan. 396, 405, 921 P.2d 779 (1990), where we held that a defendant who bound and gagged a 86-year-old robbery victim with duct tape was liable for the victim's death when he died of a heart attack while so bound and gagged. Although we may speak of causation in such a case, our ruling in *Shaw* is better described by quoting syllabus ¶ 2: "The victim must be taken as the defendant finds him. Death resulting from a heart attack will support a felony-murder conviction if there is a causal connection between the heart attack and the felonious conduct of the defendant." This is not the embracing of a proximate cause approach under the facts we face.

An additional argument has been made that when we approved the language of PIK Crim. 3d 56.02 relating to the causation required by the law for felony murder in *State v. Lamae*, 268 Kan. 544, 555, 998 P.2d 106 (2000), we recognized that the killing could be perpetrated by the defendant *or another*. (Emphasis added). The case involved the death of a participant in a methamphetamine fire. Our opinion did state: "It is true that there must be a direct causal connection between the commission of the felony and the homicide to invoke the felony-murder rule. See *State v. Under-*

*wood,* 228 Kan. 294, 302, 615 P.2d 153 (1980). *However, the general rules of proximate cause used in civil actions do not apply."* (Emphasis added.) 268 Kan. at 555. This language, if taken in isolation, is much more favorable to Sophophone's position. However, we believe that neither this statement nor the "or another" language in *Lamae* should be given undue consideration when we resolve the different question we face here.

There is language in K.S.A. 21-3205(2) that predicates criminal responsibility to an aider or abettor for "any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended." This wording does not assist us for the killing of the co-felon in our case where it was the lawful act by a law enforcement officer who was in no manner subject to these aider and abettor provisions.

The overriding fact which exists in our case is that neither Sophophone nor any of his accomplices "killed" anyone. The law enforcement officer acted lawfully in committing the act which resulted in the death of the co-felon. This does not fall within the language of K.S.A. 21-3205 since the officer committed no crime.

When the 1992 Kansas Legislature made extensive amendments to our criminal code, including K.S.A. 21-3401, one of the stated goals was to "conform the code to the majority of states' laws when doing so was not clearly contrary to the Legislature's intent." See Comment 48 Kan. L. Rev. 1047, 1055 n. 68. But, this provides no insight to the problem we face and certainly does not require us to adopt the agency approach which the majority of the jurisdictions in the United States do follow.

Of more assistance to us is our long-time rule of statutory interpretation:

"[C]riminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute. The rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." *State v. Vega-Fuentes,* 264 Kan. 10, 14, 955 P.2d 1235 (1998).

It appears to the majority that to impute the act of killing to Sophophone when the act was the lawful and courageous one of a

law enforcement officer acting in the line of his duties is contrary to the strict construction we are required to give criminal statutes. There is considerable doubt about the meaning of K.S.A. 21-3401(b) as applied to the facts of this case, and we believe that making one criminally responsible for the lawful acts of a law enforcement officer is not the intent of the felony-murder statute as it is currently written. *Cf. State v. Murphy*, 270 Kan. 804, 19 P.3d 80 (2001) (felon may not be convicted of felony murder for the killing of his co-felon caused not by his acts or actions but by the lawful acts of a victim of aggravated robbery and kidnapping acting in self-defense for the protection of his residence and the property thereof).

It does little good to suggest one construction over another would prevent the commission of dangerous felonies or that it would deter those who engage in dangerous felonies from killing purposely, negligently, or accidentally. Actually, innocent parties and victims of crimes appear to be those who are sought to be protected rather than co-felons.

We hold that under the facts of this case where the killing resulted from the lawful acts of a law enforcement officer in attempting to apprehend a co-felon, Sophophone is not criminally responsible for the resulting death of Somphone Sysoumphone, and his felony-murder conviction must be reversed.

This decision is in no manner inconsistent with our rulings in *Hoang* or *Lamae*, which are based on the direct acts of a co-felon and are simply factually different from our case. Sophophone's request that *State v. Hoang*, 243 Kan. 40, 755 P.2d 7 (1988), be overruled is denied.

Reversed.

ABBOTT, J., dissenting: The issue facing the court in this case is whether Sophophone may be legally convicted under the felony-murder statute when he did not pull the trigger and where the victim was one of the co-felons. The majority holds that Sophophone cannot be convicted of felony murder. I dissent.

An analysis of this issue must begin with an examination of the murder statute. K.S.A. 21-3401 provides:

"Murder in the first degree is the killing of a human being committed:
"(b) in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 21-3436 and amendments thereto."

When an issue requires statutory analysis and the statute is unambiguous, we are limited by the wording chosen by the legislature. We are not free to alter the statutory language, regardless of the result. In the present case, the felony-murder statute does not require us to adopt the "agency" theory favored by the majority. Indeed, there is nothing in the statute which establishes an agency approach. The statute does not address the issue at all. The requirements, according to the statute, are: (1) there must be a killing, and (2) the killing must be committed in the commission, attempt to commit, or flight from an inherently dangerous felony. The statute simply does not contain the limitations discussed by the majority. There is nothing in K.S.A. 21-3401 which requires us to adopt the agency approach or that requires Sophophone to be the shooter in this case. The facts in this case, in my opinion, satisfy all of the requirements set forth in K.S.A. 21-3401(b).

Moreover, there are sound reasons to adopt the proximate cause approach described in the majority opinion. In *State v. Hoang*, 243 Kan. 40, 755 P.2d 7 (1988), this court took such an approach, although never referring to it by name. In *Hoang*, Chief Justice McFarland, writing for the court, discussed at length the requirements of the felony-murder rule in Kansas and stated:

"In felony-murder cases, the elements of malice, deliberation, and premeditation which are required for murder in the first degree are deemed to be supplied by felonious conduct alone *if a homicide results*. To support a conviction for felony murder, *all that is required is* to prove that a felony was being committed, which felony was inherently dangerous to human life, and that the homicide which followed *was a direct result of the commission of that felony. In a felony-murder case, evidence of who the triggerman is is irrelevant and all participants are principals.* [Citations omitted.]

"The purpose of the felony-murder doctrine is to deter all those engaged in felonies from killing negligently or accidentally. . . .

. . . .

"It is argued in the case before us that felony murder applies only to the deaths of 'innocents' rather than co-felons. There is nothing in our statute on which to base such a distinction. . . .

. . . .

"Dung and Thuong, the decedents herein, were human beings who were killed in the perpetration of a felony. . . . Defendant was an active participant in the felony and present on the scene during all pertinent times. *There is nothing in the statute excluding the killing of the co-felons herein from its application.* For this court to exclude the co-felons would constitute judicial amendment of a statute on philosophic rather than legal grounds. This would be highly improper. The legislature has defined felony murder. If this definition is to be amended to exclude the killing of co-felons therefrom under circumstances such as are before us, it is up to the legislature to make such an amendment." 243 Kan. at 41-42, 45-46. (Emphasis added.)

It is not this court's prerogative to decide what is and is not felony murder. That is a legislative function.

*Hoang* was decided in 1988, almost 13 years ago. The legislature has not amended or altered K.S.A. 21-3401 since that time to prevent the felony-murder statute from being used when the victim is a co-felon or where the defendant's actions are not the immediate cause of the death. The majority states that the decision in this case is not inconsistent with the ruling in *Hoang*. I disagree. The language in *Hoang* warns of the dangers of judicial reconstruction and statutory revisionism; however, the majority has taken that approach regardless. Although the facts in *Hoang* are not identical to the facts in this case, the differences are inconsequential. In my opinion, *Hoang* is still good law and provides ample justification to apply the felony-murder rule to Sophophone.

The majority in this case points out that the majority of states have adopted the agency approach when faced with the death of a co-felon. They acknowledge, however, that because statutes vary significantly from state to state, reference to a "majority" rule and a "minority" rule is meaningless. Indeed, an in-depth analysis of the current case law in this area leads me to the following conclusions: (1) While a majority of states would agree with the majority opinion in this case, the margin is slim; (2) many of the states that have adopted the so-called "agency" approach have done so because the statutory language in their state *requires* them to do so; and (3) several of the states that have adopted the "proximate cause" approach have done so because their statutes are silent on the issue, like Kansas.

The following courts have used a proximate cause approach instead of following the agency theory adopted by the majority in this case. Several of the following cases also involve factual situations where the co-felon was killed by a police officer, as is the situation in the present case. See *State v. Lopez*, 173 Ariz. 552, 556, 845 P.2d 478 (Ct. App. 1993) (affirming felony-murder conviction where police officer shot co-felon while defendant was already under arrest by using the proximate cause approach as set forth by Arizona statute); *State v. Wright*, 379 So.2d 96, 96-97 (Fla. 1980) (holding that there was nothing in the Florida felony-murder statute which limited application to "innocent persons killed" by the defendant); *People v. Dekens*, 182 Ill. 2d 247, 252, 695 N.E.2d 474 (1998) (Illinois follows the proximate cause theory of felony murder); *Jenkins v. State*, 726 N.E.2d 268, 269-70 (Ind. 2000) (holding that Indiana felony-murder statute does not require the victim to be "innocent" and that defendant could be convicted of felony murder where robbery victim shot and killed co-felon); *Palmer v. State*, 704 N.E.2d 124, 125-26 (Ind. 1999) (affirming felony-murder conviction where co-felon was shot by police officer); *State v. Baker*, 607 S.W.2d 153, 156-57 (Mo. 1980) (affirming conviction where death was a proximate result of the acts of the defendant and his accomplices); *State v. Blackmon*, 587 S.W.2d 292, 293 (Mo. Ct. App. 1979) (affirming felony-murder conviction where victim was shot by an off-duty police officer); *State v. Burton*, 130 N.J. Super. 174, 178-79, 325 A.2d 856 (1974) (affirming felony-murder conviction where police killed co-felon during commission of a robbery and where statutory language indicated a preference for the proximate cause approach); *In re Leon*, 122 R.I. 548, 554-55, 410 A.2d 121 (1980) (taking a proximate cause approach and holding that defendant could be convicted of felony murder where the victim was a co-felon); *State v. Oimen*, 184 Wis. 2d 423, 435, 516 N.W.2d 399 (1994) (adopting proximate cause approach where co-felon was killed by burglary victim).

Some courts have been forced to take an agency approach because of the statutory language contained within their felony-murder statutes. See *Weick v. State*, 420 A.2d 159, 161-63 (Del. 1980) (reversing second-degree murder conviction where victim killed

co-felon because statute requires that "he, with criminal negligence, causes the death of another person"); *State v. Jones*, 859 P.2d 514, 515 (Okla. Crim. 1993) (taking an agency approach because statute provides that the person committing the felony must "take the life of a human being"); *State v. Hansen*, 734 P.2d 421, 427 (Utah 1986) (holding that state law precluded second-degree felony-murder conviction where co-felon is killed because language in statute requires the death to be "other than a party" to the crime).

As noted in *Hoang*, references to cases from other jurisdictions, regardless of the "majority" or "minority" rule, is unnecessary because the statutory language, if unambiguous, should control the outcome. 243 Kan. at 44-46.

In my opinion, our statute is unambiguous and simply does not require the defendant to be the direct cause of the victim's death, nor does it limit application of the felony-murder rule to the death of "innocents."

In *People v. Lowery*, 178 Ill.2d 462, 687 N.E.2d 973 (1997), the Illinois Supreme Court discussed the public policy reasons justifying application of a proximate cause approach, stating:

"It is equally consistent with reason and sound public policy to hold that when a felon's attempt to commit a forcible felony sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act. Thus, there is no reason why the principle underlying the doctrine of proximate cause should not apply to criminal cases. Moreover, we believe that the intent behind the felony-murder doctrine would be thwarted if we did not hold felons responsible for the foreseeable consequences of their actions. [Citations omitted.]" 178 Ill. 2d at 467.

In *Sheckles v. State*, 684 N.E.2d 201 (Ind. Ct. App. 1997), the Indiana Court of Appeals opined:

"[A] person who commits or attempts to commit one of the offenses designated in the felony-murder statute is criminally responsible for a homicide which results from the act of one who was not a participant in the original criminal activity. Where the accused reasonably should have . . . foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation which would expose another to the danger of death at the hands of a nonparticipant in the felony, and where death in fact occurs as was foreseeable, the creation

of such a dangerous situation is an intermediary, secondary, or medium in effecting or bringing about the death of the victim." 684 N.E.2d at 205.

Likewise, the Supreme Court of New Jersey discussed the historical justification for application of the proximate cause rule in felony-murder cases in *State v. Martin*, 119 N.J. 2, 573 A.2d 1359 (1990), stating:

"More recently, felony murder has been viewed not as a crime of transferred intent, but as one of absolute or strict liability. Whether the offense is viewed as a crime of transferred intent or as one of absolute liability, the continuing justification for the felony-murder rule is that in some circumstances one who commits a felony should be liable for a resulting, albeit unintended, death. Conversely, other deaths are so remotely related to the underlying felony that the actor should not be held culpable for them. Our task is to ascertain the circumstances in which the Legislature has decided that one who commits a felony should also be culpable for a resulting death.

"The historical justification for the rule is that it serves as a general deterrent against the commission of violent crimes. [Citation omitted.] The rationale is that if potential felons realize that they will be culpable as murderers for a death that occurs during the commission of a felony, they will be less likely to commit the felony. From this perspective, the imposition of strict liability without regard to the intent to kill serves to deter the commission of serious crimes." 119 N.J. at 20.

Here, Sophophone set in motion acts which would have resulted in the death or serious injury of a law enforcement officer had it not been for the highly alert law enforcement officer. This set of events could have very easily resulted in the death of a law enforcement officer, and in my opinion this is exactly the type of case the legislature had in mind when it adopted the felony-murder rule.

The majority has opened a Pandora's box and left the law grossly unsettled. It does not take much imagination to see a number of situations where a death is going to result from an inherently dangerous felony and the majority's opinion is going to prevent the accused from being charged with felony murder.

If there is to be a change in the law, it should be by the legislature and not by this court adopting a statutory scheme set forth by the legislatures of other states. I would continue to follow the proximate cause theory of liability for felony murder which holds that criminal liability attaches for any death proximately resulting from

the unlawful activity notwithstanding the fact that the killing was by one resisting the crime.

I would affirm the conviction based upon the statutory language found in K.S.A. 21-3401, the decision in *Hoang*, and the cases cited from other jurisdictions.

MCFARLAND, C.J., and DAVIS, J., join in the foregoing dissenting opinion.